**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ASMAR BEASE,** | **Civil Action No. 16–2829 (SDW)** |
| **Petitioner** | |
| **v.** | **OPINION** |
| **THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, et al.,** | |
| **Respondents** | |

**WIGENTON**, District Judge:

Presently before this Court is the amended petition for writ of habeas corpus under 28 U.S.C. § 2254 ("Amended Petition") by Petitioner Asmar Bease challenging his New Jersey state court convictions. (ECF No. 2). Respondents oppose the Amended Petition. (ECF No. 14).[1] Petitioner also submitted supplemental claims in a motion to amend ("Supplement") (ECF No. 29). Respondents oppose the claims in the Supplement. (ECF No. 41).

This Court will resolve the Amended Petition and Supplement on the briefs pursuant to Federal Rule of Civil Procedure 78(b). For the following reasons, the Amended Petition is denied. The claims raised in the Supplement are provisionally dismissed as time barred, but Petitioner may submit equitable tolling arguments.

---

[1] Respondents' exhibits were filed at Docket Entry No. 14 and are referred to herein by the docket and page numbers assigned by the Court's Case Management Electronic Case Filing system, CM/ECF.

## I. BACKGROUND

On or about January 6, 2009, Petitioner was charged in a six-count indictment in the Superior Court of New Jersey, Passaic County with first-degree attempted murder, second-degree aggravated assault, fourth-degree aggravated assault by pointing a firearm, second-degree possession of a weapon for an unlawful purpose, second-degree unlawful possession of a weapon without a carry permit, and two counts of second-degree certain persons not to have weapons. (ECF No. 14–3). The Superior Court of New Jersey, Appellate Division ("Appellate Division") made the following findings of fact on direct appeal:[2]

> On August 1, 2008, the victim, Alphonso Gee, and his wife, were at home. Gee's wife asked him if she could go out with a female friend for a couple of hours. Gee reminded his wife the couple had plans the following day and she said she would be home by 2:00 a.m. Around 2:30 a.m., Gee realized his wife was still not home and called her on the telephone. She said she was on her way home from New York and would be there in ten or fifteen minutes. When his wife failed to appear, Gee got in his car and went out looking for her between 3:30 and 4:00 a.m.
>
> Gee found the vehicle his wife was driving that night parked at an intersection. He opened the rear driver's side door and saw his wife and defendant Asmar Bease in the backseat. Gee testified that "Asmar had his pants down to his ankles" and his wife was "naked from the waist down." Gee "snatched" his wife out of the vehicle and started to hit her. He then called her mother and brother "just to show them how she was." Gee drove his wife "a block or two away," dropped her off with her brother, who was waiting there, and went to find defendant.
>
> Gee testified he knew defendant from fundraisers Gee held for a youth football team he coached. Gee frequently saw and occasionally spoke to defendant at a specific location when he picked up and dropped off children from his football team there. Because Gee knew where defendant usually could be found, he went

---

[2] This Court defers to the state courts' factual determinations pursuant to 28 U.S.C. § 2254(e)(1) and adopts the facts as set forth by the Appellate Division in its direct appeal and collateral review opinions.

to that location to look for him after leaving his wife with her brother.

When Gee arrived at the location, he saw defendant, stopped his vehicle, and got out to approach him.  Co-defendant [Corey] Cauthen then "came out of nowhere[.]"  Gee recognized Cauthen as someone who hung out with defendant "basically every [ ]day."  Although Gee had spoken to Cauthen at least once in the past, he did not know his name.  He described Cauthen as a "tall dark skinned male with dreadlocks."

As Gee approached the men, he saw them reach in their pockets and pull out guns.  Because he was unarmed, Gee got back into his vehicle and tried to "get out of there."  Gee saw both men with guns pointed at the left side of his face.  When he tried to start his vehicle, the men shot at him, and Gee "slumped over" after being shot several times in the collar bone and neck.

Officer Fajardo was the first police officer to arrive at the scene.  He found Gee inside his vehicle, leaning over toward the console and unresponsive.  Officer Fajardo was unable to find a pulse and told the next officer to arrive that he thought Gee was dead.  Gee then started grunting.  The officers called for an ambulance and applied first aid until it arrived.

Officer English rode in the ambulance with Gee and was instructed by a police sergeant to "try and speak with the victim, find out any information related to the case."  Officer English advised Gee "that his injuries were life threatening, that what he tells me could be his dying declaration ... . I asked him if he knew who shot him.  [Gee] stated it was Asmar Bease and a tall dark skinned male with dreadlocks."  The officer repeated the question and Gee provided the same answer, and added, "'It was because I caught him having sex with my wife.'"

Lt. Reyes arrived at the scene of the shooting at around 6:00 a.m. on August 2, 2008.  After reviewing the scene, Lt. Reyes went to the hospital to interview Gee.  Upon arriving at the hospital, Lt. Reyes spoke to Gee in the trauma room at the hospital.  Gee was paralyzed from the neck down, but was still able to speak.  Gee told Lt. Reyes that he caught his wife having sex with Bease, approached Bease to fight him, and Bease, who he knew by name, and a "thin tall black male with long dreads" shot him.  Lt. Reyes relayed this information to the other detectives and, because they were familiar with Cauthen from a previous investigation, they knew that Gee was referring to Cauthen as the "thin tall black male with long dreads."

3

> The detectives went back to the scene of the shooting to look for evidence, and then to police headquarters to gather photos of both defendant and Cauthen to show Gee.  The detectives returned to the emergency room later that morning and conducted a second interview of Gee.   Lt. Reyes showed Gee the photograph of defendant, and Gee confirmed that the photograph was of defendant, that defendant was one of the individuals involved in the shooting, and that he had known him for a while.
>
> Gee stated that he also knew the other individual involved in the shooting because "he always hangs out with [defendant] ... in that location ... on one of the porches."  Lt. Reyes then showed Gee the photograph of Cauthen, and Gee positively identified him as the second individual involved in the shooting.  During his testimony, Gee identified both defendant and Cauthen as the men who shot him.

*State v. Bease*, No. A–5782–11T3, 2015 WL 345841, at *2–3 (N.J. Super. Ct. App. Div. Jan. 28, 2015) ("*Bease I*") (first alteration added) (omissions in original).  The trial court dismissed the certain persons offenses at the conclusion of trial, and the jury convicted Petitioner on the rest of the charges.  (ECF No. 2–1 at 8–9).  Petitioner was sentenced to an aggregate term of 60 years, subject to an 85 percent period of parole ineligibility, to be followed by a 5-year term of parole supervision.  *Bease I*, 2015 WL 345841 at *1.

Petitioner appealed to the Appellate Division.  (ECF No. 2–1 at 21).  Appellate Counsel filed a brief arguing that the out-of-court identification process was unduly suggestive and prejudicial, that Gee's "dying declaration" was inadmissible, the trial court erred in failing to grant a mistrial motion after a "juror incident," and that the sentence was excessive.  *Bease I*, 2015 WL 345841 at *1.  Petitioner submitted a *pro se* supplemental brief arguing that trial counsel had an impermissible conflict of interest, trial counsel failed to adequately inquire into the "juror incident," and that the trial court erred by failing to include attempted passion/provocation manslaughter as a lesser included offense.  *Id.*

4

The Appellate Division declined to address Petitioner's ineffective assistance of counsel claims on direct appeal because they involved "allegations and evidence that lie outside the trial record." *Id.* at *7 (internal quotation marks omitted). The court affirmed Petitioner's convictions and sentence on January 28, 2015. *Id.* at *9. The New Jersey Supreme Court denied certification on May 22, 2015. *State v. Bease*, 221 N.J. 566 (2015).

Petitioner filed his original habeas corpus petition on May 19, 2016. (ECF No. 1). He filed an Amended Petition on May 23, 2016, (ECF No. 2), and District Judge John Michael Vazquez ordered the State of New Jersey to respond on May 25, 2016, (ECF No. 3). On September 6, 2016, Petitioner moved for a stay and abeyance of the Amended Petition in order to file a post-conviction relief ("PCR") petition in the state courts. (ECF No. 7). Judge Vazquez granted the motion and administratively terminated the § 2254 proceedings pending state court exhaustion on March 10, 2017. (ECF No. 10).

Petitioner filed his PCR petition on May 21, 2017. (ECF No. 14–14). The PCR court denied the petition without an evidentiary hearing on June 29, 2018. (ECF No. 14–20). On December 13, 2021, the Appellate Division affirmed the PCR court's decision. *State v. Bease*, No. A–1956–19, 2021 WL 5872873, at *1 (N.J. Super. Ct. App. Div. Dec. 13, 2021) ("*Bease II*"). The New Jersey Supreme Court denied certification on January 13, 2023. *State v. Bease*, 252 N.J. 483 (2023).

On February 9, 2023, Petitioner wrote to the court and requested to reopen the § 2254 proceedings. (ECF No. 11). Judge Vazquez reopened the proceedings and reissued the order to answer on February 21, 2023. (ECF No. 12). Respondent filed its answer on April 6, 2023. (ECF No. 14). On December 11, 2023, Petitioner filed a motion to amend seeking to include more claims of ineffective assistance of counsel. (ECF No. 29). This Court allowed Petitioner to file

the Supplement but did so without prejudice to any affirmative defenses Respondent wanted to raise.  (ECF No. 34).[3]  Respondent submitted an amended answer on June 13, 2024.  (ECF No. 41).

## II.  LEGAL STANDARD

"The federal habeas statute, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases."  *Shoop v. Hill*, 586 U.S. 45, 48 (2019).  A federal court may entertain a petition for writ of habeas corpus on behalf of a person in state custody pursuant to the judgment of a state court "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent."  *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).  "[A] state-court decision is an unreasonable application of [the

---

[3] The matter was reassigned to this Court on September 19, 2023.  (ECF No. 22).

Supreme Court's] clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." *White v. Woodall*, 572 U.S. 415, 426 (2014). "This means that a state court's ruling must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Shoop*, 586 U.S. at 48 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). This Court must presume that the state court's factual findings are correct unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Even if a petitioner meets AEDPA's "difficult" standard, he must still show that any constitutional error had a "substantial and injurious effect or influence" on the verdict. *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993). *See Brown v. Davenport*, 596 U.S. 118, 134 (2022) ("[E]ven a petitioner who prevails under AEDPA must still today persuade a federal habeas court that 'law and justice require' relief.").

## III.  DISCUSSION

### A.    Impermissibly Suggestive Identification Procedure

Petitioner argues that the single-photograph identification procedure used by Lt. Reyes was impermissibly suggestive. (ECF No. 2 at 5). The Appellate Division denied this claim on direct appeal. *Bease I*, 2015 WL 345841 at *3–4.

"[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968); *see also United States v. Brownlee*, 454 F.3d 131, 137 (3d Cir. 2006) ("An identification procedure that is both (1)

unnecessarily suggestive and (2) creates a substantial risk of misidentification violates due process.")  "This determination ... depends on the totality of the factual circumstances present in the case."  *United States v. Stevens*, 935 F.2d 1380, 1389 (3d Cir. 1991) (citing *Simmons*, 390 U.S. at 383).

The Appellate Division assumed without deciding that the procedure was unnecessarily suggestive but found that Gee's identification was "inherently reliable" after considering several factors:

> (1) Gee and defendant were not strangers and Gee knew defendant from frequently seeing him at a specific location; (2) the identification procedure occurred no more than "four or five hours" after the shooting; (3) Gee was paying attention to both defendant and Cauthen as he met them on the street and he had ample opportunity to observe defendant because he was shot at point blank range; (4) Gee consistently identified defendant by name before being shown the photograph; (5) Gee's positive identification was immediate and certain; and (6) Lt. Reyes did not prompt Gee in any way during the procedure.

*Bease I*, 2015 WL 345841 at *4.  This is consistent with federal law.  *See Neil v. Biggers*, 409 U.S. 188, 199–200 (1972) (setting forth factors to be considered in evaluating the likelihood of misidentification).  Therefore, this Court concludes that the Appellate Division's resolution of the claim was not contrary to or an unreasonable application of federal law.  Habeas relief is denied on this ground.

### B.    Improper Admission of Dying Declaration

Petitioner's second claim for relief asserts that the trial court improperly allowed Officer English to testify about the "dying declaration" Gee made to him in the ambulance identifying Petitioner as the shooter.  (ECF No. 2 at 7).  Petitioner asserts "[t]he statement did not constitute a dying declaration and was only admissible if the declarant was unavailable."  *Id.*  The Appellate Division rejected the argument on direct appeal.  *Bease I*, 2015 WL 345841 at *4.

"Admissibility of evidence is a state law issue." *Wilson v. Vaughn*, 533 F.3d 208, 213 (3d Cir. 2008). This Court cannot grant habeas relief for violations of state law. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Watts v. Owens*, No. 89–cv–8773, 1991 WL 111237, at *2 (E.D. Pa. June 17, 1991) (holding that habeas petitioner's contention that the victim's statement should not have been admitted at trial as a dying declaration was "a state evidentiary issue, not a federal constitutional claim."), *aff'd*, 953 F.2d 1382 (3d Cir. 1992). "To rise to the level of a constitutional violation, a state court's evidentiary decision must have been so arbitrary or prejudicial that it rendered the trial fundamentally unfair, thereby violating a petitioner's due process rights." *Sample v. D'Ilio*, No. 15–cv–5487, 2018 WL 3054676, at *5 (D.N.J. June 20, 2018).

"[O]ut of court statements by an unavailable declarant are not admissible at trial unless the defendant had a prior opportunity to cross-examine the declarant. However, a notable exception to this rule is the dying declaration." *Jackson v. Johnson*, No. 16–cv–1484, 2019 WL 13260175, at *9 (D.N.J. Mar. 19, 2019). "Pursuant to this exception, the New Jersey Rules of Evidence permit the admission of a statement made by a victim unavailable as a witness if it was made voluntarily and in good faith and while the declarant believed in the imminence of declarant's pending death." *Id.* (cleaned up) (citing N.J. R. Evid. 804(b)(2)). This mirrors the Federal Rule of Evidence. Fed. R. Evid. 804(b)(2). "A declarant is considered to be unavailable as a witness if the declarant: testifies to not remembering the subject matter." Fed. R. Evid. 804(a)(3).

Gee testified that he believed he was going to die after being shot in the neck. (ECF No. 14–40 at 48). He did not remember speaking with Officer English in the ambulance. (*Id.*) Therefore, the Appellate Division's decision was based on a reasonable application of the facts

9

and does not contradict federal law. Petitioner has not shown that the admission of the declaration rendered his trial fundamentally unfair; therefore, this Court will deny habeas relief on this claim.

### C.    Improper Juror Contact

Petitioner's third claim for relief is that he was denied a fair trial due to "an outsider's improper contact with a juror during deliberations." (ECF No. 2 at 8). The Appellate Division found the following facts on direct appeal:

> During the jury's deliberations, Juror 3 was sitting on a bench outside the courtroom. A man identified as a Drug Court participant walked up to Juror 3, sat down, and began reading a newspaper. Juror 3 stated she did not look at the newspaper and tried to "just ignore the man completely."
>
> The man then asked her, "'Are you a juror?'" Juror 3 "nodded yes," and the man stated, "Okay.' He goes, 'Not guilty.'" Juror 3 stated she "just laughed it off as if it was a joke" and "just ignored" the man. He then said, "'You have to let our people go.'" Juror 3 did not reply to him. An officer then opened the door for the jurors to enter the courtroom and Juror 3 went inside. As she did, the man said, "'No, seriously, not guilty.'" The man was smiling "the entire time." Juror 3 stated she did not "feel threatened" at any time.
>
> When Juror 3 went into the jury room, she told the other jurors what had happened, and they encouraged her to "say something" to the court about it. She then alerted an officer, who brought the matter to the attention of the judge. After discussing the matter with counsel, the judge interviewed Juror 3 in camera. The attorneys also had the opportunity to question her. Juror 3 stated that the incident would not "affect her ability to continue to deliberate in the matter in a fair and impartial manner."
>
> The judge then interviewed each of the other jurors one-by-one. Again, the attorneys had the opportunity to ask questions. None of the jurors felt threatened by what occurred. Each juror stated the incident would not affect their ability to continue to deliberate in a fair and impartial manner.
>
> After the interviews were completed, both defense attorneys moved for a mistrial. The judge denied the motions, finding that the jurors properly "followed the proper protocol" by reporting the incident, and that "all of them indicated that they feel that they can continue to deliberate fairly and impartially."

*Bease I*, 2015 WL 345841 at *5–6 (cleaned up). "An officer briefly detained the man after learning he had spoken to one of the jurors. The newspaper the man was carrying was

10

'rolled up at the time' and he was carrying it in his hand.  The officer stated the newspaper contained a story about the trial in the 'Our Town section.'"  *Id.* at \*5 n.5 (cleaned up). The trial court concluded that "'there was nothing which remotely indicated' that Juror 3, or any of the other jurors, had seen the newspaper article about the trial." *Id.* at \*6 (cleaned up).  Petitioner argues his right to an impartial jury was violated by the trial court's decision not to declare a mistrial.  (ECF No. 2 at 8).

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed ... ."  U.S. Const. amend. VI.  "[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation."  *Smith v. Phillips*, 455 U.S. 209, 217 (1982).  However, "[i]n a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties."  *Remmer v. United States*, 347 U.S. 227, 229 (1954).  "The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant."  *Id.*

"Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen."  *Smith*, 455 U.S. at 217. Here, the trial court followed federal law by conducting an individual voir dire of each juror and allowing trial counsel to question the jurors.  *See id.*; *United States v. Mack*, 816

F. App'x 691, 692 n.3 (3d Cir. 2020) ("Individual voir dire is the method of inquiry we have preferred where there is a significant possibility that a juror has been exposed to prejudicial extra-record information." (cleaned up)); *United States v. Console*, 13 F.3d 641, 667 (3d Cir. 1993). Each juror stated that they would be able to continue deliberating fairly and impartially and that they did not feel threatened. *Bease I*, 2015 WL 345841 at *6. Moreover, there was no evidence that the jurors were aware of the newspaper article. *Id.* "[T]he presumption of prejudice is effectively rebutted by a juror's credible profession of impartiality." *United States v. Smith*, 319 F. Supp. 2d 527, 533 (E.D. Pa. 2004). Therefore, it was reasonable for the trial court and Appellate Division to conclude that Petitioner had not been prejudiced by the comments to Juror 3.

This Court will deny habeas relief on this claim as Petitioner has not shown that the state courts' decisions were contrary to or an unreasonable application of established federal law.

### D.    Excessive Sentence

Next, Petitioner asserts that his 60-year sentence for attempted murder was excessive. (ECF No. 2 at 10). He argues that he "was not deemed to be the aggressor and had a colorable defense of passion/provocation or self-defense" and "no prior history of misbehavior justified" the sentence. (*Id.*) The Appellate Division denied this argument on direct appeal. *Bease I*, 2015 WL 345841 at *8–9.

"[A] federal court's ability to review state sentences is limited to challenges based on 'proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies.'" *Rollins v. Slaughter*, No. 19–cv–13390, 2022 WL 2358387, at *17 (D.N.J. June 30, 2022) (quoting *Grecco v. O'Lone*, 661 F. Supp. 408, 415 (D.N.J. 1987)). "Thus,

federal courts may not review a challenge to a state court's discretion at sentencing unless it violates a separate federal constitutional limitation." *Id.* (citing *Pringle v. Court of Common Pleas*, 744 F.2d 297, 300 (3d Cir. 1984)).

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" *Ewing v. California*, 538 U.S. 11, 20 (2003) (citations omitted). "A court must consider three proportionality factors when evaluating Eighth Amendment challenges: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions." *United States v. Burnett*, 773 F.3d 122, 136 (3d Cir. 2014) (citing *Solem v. Helm*, 463 U.S. 277, 290–92 (1983)). "In conducting this analysis, a court grants substantial deference to legislative decisions regarding punishments for crimes." *Id.* "The first factor acts as a gateway to the proportionality inquiry. The Eighth Amendment only forbids sentences that are 'grossly disproportionate' for a conviction for the crime involved." *Rollins*, 2022 WL 2358387, at *17.

Petitioner was convicted of first-degree attempted murder. "As defendant concedes, his criminal record 'qualified him for an extended term sentence' with a range of twenty years to life." *Bease I*, 2015 WL 345841 at *8 (citing N.J.S.A. § 2C:43–7(a)(2)). Petitioner's sentence is within that range. "Generally, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment." *United States v. Miknevich*, 638 F.3d 178, 186 (3d Cir. 2011). "If the petitioner fails to demonstrate a gross imbalance between the crime and the sentence, a court's analysis of an Eighth Amendment challenge ends." *Rollins*, 2022 WL 2358387, at *17. "Thus, although the Appellate Division addressed Petitioner's sentencing claims under the

13

lens of state law, its reasoning was neither contrary to, nor an unreasonable application of, clearly established federal law." *Id.* at *18. This Court will deny habeas relief on this claim.

### E.    Ineffective Assistance of Counsel – Conflict

Petitioner contends that trial counsel was ineffective because of a conflict of interest arising from counsel's prior representation of Lewis Alford, who had been Petitioner's co-defendant in an unrelated case. (ECF No. 2 at 12). In his PCR petition, Petitioner "speculat[ed] that Alford may have divulged information about petitioner which could have affected [trial counsel's] 'ability to sustain undivided loyalty' to him." (ECF No. 14–21 at 4). Alford submitted an affidavit in support of the PCR petition. (ECF No. 14–16 at 14). Alford stated that Petitioner's trial counsel had represented him "during the early phases" of the prior matters and that "[t]he clear indication was that the State wanted me to implicate Asmar Bease and others." (*Id.*) Alford denied that he implicated Petitioner, however. (*Id.*) The PCR court considered Alford's affidavit and concluded that "[t]here does not appear to have been any actual conflict of interest, nor even the appearance of same." (ECF No. 14–21 at 4). The Appellate Division adopted this conclusion on appeal. *Bease II*, 2021 WL 5872873, at *1.

"As a general matter, a defendant alleging a Sixth Amendment violation must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Mickens v. Taylor*, 535 U.S. 162, 166 (2002) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). "There is an exception to this general rule. We have spared the defendant the need of showing probable effect upon the outcome, and have simply presumed such effect, where assistance of counsel has been denied entirely or during a critical stage of the proceeding." *Id.* (citing *United States v. Cronic*, 466 U.S. at 658–59). "When that has occurred, the likelihood that the verdict is unreliable is so high that a case-by-case inquiry is

unnecessary. But only in 'circumstances of that magnitude' do we forgo individual inquiry into whether counsel's inadequate performance undermined the reliability of the verdict." *Id.* (citing *Cronic*, 466 U.S. at 659 n.26.) One such "circumstance of that magnitude" is when "the defendant's attorney actively represented conflicting interests." *Id.* "[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." *Cuyler v. Sullivan*, 446 U.S. 335, 349–50 (1980); *see also United States v. Gambino*, 864 F.2d 1064, 1070 (3d Cir. 1988). It is not clear that the state courts considered Petitioner's conflict claim under the *Cuyler* standard as they only cite to *Strickland* and its New Jersey equivalent. *See Bease II*, 2021 WL 5872873, at *1; (ECF No. 14–21 at 3). However, Petitioner's claim fails even if this Court conducts a de novo review rather than applying AEDPA deference.

"[U]ntil a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Cuyler*, 446 U.S. at 350. "An actual conflict is evidenced if, during the course of the representation, the [Petitioner's] interests diverge with respect to a material factual or legal issue or to a course of action." *Harmer v. Superintendent Fayette SCI*, No. 19–03146, 2021 WL 3560666, at *3 (internal quotation marks omitted). Alford stated that he discussed the possibility of implicating Petitioner or others in the prior matter, but he did not identify any specific information that was allegedly disclosed. "[T]he possibility of conflict is insufficient to impugn a criminal conviction." *Cuyler*, 446 U.S. at 350. Petitioner must provide evidence of more than just a "mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002). Because Petitioner has not done so, he is not entitled to habeas relief.

15

**F.      Failure to Instruct**

Petitioner's next claim argues that the trial court erred by failing to instruct the jury on passion provocation manslaughter and self-defense.  (ECF No. 2 at 13).  "[T]he incident occurred after the victim sought out petitioner and confronted him."  (*Id.*).  The Appellate Division rejected the manslaughter instruction challenge on direct appeal.[4]  *Bease I*, 2015 WL 345841 at *7–8.  "For attempted passion provocation manslaughter to be charged, there must be (1) reasonable and adequate provocation; (2) a lack of time for the defendant to cool off between the provocation and the act; (3) actual provocation of the defendant; and (4) the defendant must not have cooled off before committing the act."  *Id.* at *7 (citing *State v. Galicia*, 210 N.J. 364, 379–80 (2012)).  "There are insufficient facts in the record to show defendant was reasonably or adequately provoked."  *Id.*

"The United States Supreme Court and the Third Circuit have made clear that it is not the role of the federal courts to review state court jury instruction rulings that are based on state law."  *Howard v. D'Ilio*, No. 14–cv–4758, 2018 WL 1014168, at *5 (D.N.J. Feb. 22, 2018).  "A habeas claim will lie only where the jury instruction is so prejudicial as to amount to a violation of due process and fundamental fairness."  *Freeman v. Davis*, No. 18–cv–8269, 2021 WL 4705009, at *8 (D.N.J. Oct. 7, 2021) (quotations omitted).  "[A] habeas petitioner must demonstrate both (1) that the instruction contained some ambiguity, inconsistency, or deficiency, and (2) that there was a

---

[4] Petitioner does not appear to have exhausted his argument that the trial court should have issued a self-defense instruction.  *See Bease I*, 2015 WL 345841 at *7–8 (discussing manslaughter instruction); ECF No. 14–7 at 15 (Petitioner's pro se brief on direct appeal limiting argument to missing lesser included offense instruction).  Therefore, he has procedurally defaulted on this argument because he cannot return to the state courts to exhaust the claim now.  *See Shinn v. Ramirez*, 596 U.S. 366, 378 (2022).  This Court declines to consider the merits of the self-defense argument because Petitioner has not established cause and prejudice for his default.  *See id.* at 379; *Ross v. Adm'r E. Jersey State Prison*, 118 F.4th 553, 562 (3d Cir. 2024) (noting that if a defendant "did not exhaust [state court] remedies or is deemed to have exhausted those remedies only through procedural default, then his claims may be rejected without adjudicating them on their merits.")

reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Williams v. Beard*, 637 F.3d 195, 223 (3d Cir. 2011) (quotations and citations omitted). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

Having reviewed the record, this Court finds Petitioner's claim does not fall within the narrow circumstances warranting habeas relief. "[D]ue process requires that a lesser included offense instruction be given *only* when the evidence warrants such an instruction." *Hopper v. Evans*, 456 U.S. 605, 611 (1982) (emphasis in original). Petitioner argues "he was provoked because Gee said he would return to 'take care' of defendant, and punched him as [Gee] took his wife out of the vehicle." *Bease I*, 2015 WL 345841 at *7. The trial evidence indicated that a sufficient "cooling off" period elapsed between Gee's discovery of his wife with Petitioner—when Gee allegedly struck and threatened Petitioner—and his later encounter with Petitioner. *Id.* at *8. In addition, the evidence indicated that Petitioner brought Cauthen and weapons to ambush Gee. *Id.* This Court finds that the Appellate Division reasonably concluded that the evidence did not support a passion provocation manslaughter charge. Therefore, the Appellate Division did not reach a decision contrary to established federal law when it rejected Petitioner's argument. This Court will deny habeas relief on this claim.

### G.    Additional Ineffective Assistance Claims

On December 11, 2023, Petitioner requested permission to include more claims of ineffective assistance of counsel in a Supplement. (ECF No. 29). This Court allowed Petitioner to file the Supplement but did so without prejudice to any affirmative defenses Respondent wanted to raise. (ECF No. 34). Respondents did not raise any affirmative defenses, (*see generally* ECF

No. 41), but upon further review, this Court *sua sponte* concludes the new claims are barred by AEDPA's statute of limitations.  *See Day v. McDonough*, 547 U.S. 198, 209 (2006) ("[D]istrict courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition."); *Long v. Wilson*, 393 F.3d 390, 403 (3d Cir. 2004) ("It is now widely recognized that judges have discretion to raise procedural issues in habeas cases.")

AEDPA imposes a one-year period of limitation on a petitioner seeking to challenge his state conviction and sentence through a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  "This limitations period applies to new petitions 'as well as amendments of existing motions to add new claims or legal theories after the one-year period has expired.'" *Saunders v. D'Illio*, No. 15–cv–2683, 2016 WL 4689038, at *2 (D.N.J. Sept. 7, 2016) (quoting *Mass v. United States*, No. 11–cv–2407, 2014 WL 6611498, at *3 (D.N.J. Nov. 20, 2014)); *see also United States v. Thomas*, 221 F.3d 430, 431 (3d Cir. 2000).

Petitioner's conviction became final 90 days after the New Jersey Supreme Court denied certification of his direct appeal.  *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012).  Therefore,

Petitioner's conviction became final on August 20, 2015, and AEDPA's statute of limitations began to run on August 21, 2015. Petitioner filed his original habeas corpus petition on May 19, 2016, but this "did not stop the clock; there is no statutory tolling during the pendency of a *federal* habeas petition." *Lewis v. McGinley*, No. 23–cv–3973, 2024 WL 185289, at *4 (E.D. Pa. Jan. 16, 2024) (citing *Duncan v. Walker*, 533 U.S. 167, 181–82 (2001)). AEDPA's statute of limitations continued to run on any new claims until it expired on August 22, 2016,[5] well before Petitioner filed his PCR petition on May 21, 2017. (ECF No. 14–14).

The new claims would have been filed late even if this Court equitably tolled the time between Petitioner's filing date, May 19, 2016, and the date the § 2254 proceedings were reopened, February 21, 2023. (ECF No. 11). AEDPA's statute of limitations ran for 272 days before the original petition was filed, leaving 93 days remaining in the one-year period. Petitioner filed his motion to amend 293 days after Judge Vazquez reopened the proceedings, which is more than the remaining 93 days.

As the motion itself was untimely under § 2244, the new grounds for relief must relate back to the original petition in order not to be time-barred under AEDPA. "Amendments made after the statute of limitations has run relate back to the date of the original pleading if the original and amended pleadings 'ar[i]se out of the conduct, transaction, or occurrence.'" *Mayle v. Felix*, 545 U.S. 644, 655 (2005) (alteration in original) (quoting Fed. R. Civ. Pro. 15(c)). In *Mayle*, the Supreme Court rejected the argument that an amendment to a habeas petition relates back to the original petition "so long as the new claim stems from the habeas petitioner's trial, conviction, or sentence. Under that comprehensive definition, virtually any new claim introduced in an amended petition will relate back, for federal habeas claims, by their very nature, challenge the

---

[5] August 20, 2016 was a Saturday. Fed. R. Civ. P. 6(a)(1)(C).

constitutionality of a conviction or sentence, and commonly attack proceedings anterior thereto." *Id.* at 656–57. The Court held that "relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Id.* at 659.

This Court will discuss each claim presented in the Supplement in turn.

### 1.    *Conflict of Counsel*

The first claim that Petitioner seeks to add is that trial counsel was operating under a conflict of interest. (ECF No. 29 at 2). This claim is identical to the claim asserted in the Amended Petition that this Court has denied on the merits *supra*. No further discussion is necessary.

### 2.    *Severance*

Next, Petitioner asserts that trial counsel was ineffective for failing to request that Petitioner's trial be severed from Cauthen's trial. (*Id.* at 3–4). This argument does not arise from a common core of facts with any claim asserted in the Amended Petition. Therefore, it is barred by the statute of limitations.

### 3.    *Failure To Pursue Dismissal Motion*

Petitioner asserts that trial counsel should have moved to dismiss the indictment due to allegedly exculpatory statements made by Gee to the trial court and grand jury. (*Id.* at 5). This argument does not arise from a common core of facts with any claim asserted in the Amended Petition. Therefore, it is barred by the statute of limitations.

### 4.    *Other Claims*

Petitioner lists several other ineffective assistance of counsel claims: "waiver of a *Sands/Brunson* hearing absent adequate consultation with Petitioner"; "improvident consent to admission of Gee's medical reports and failing to elicit testimony as to the contents which supported the verity of Gee's recantations to the grand jury"; "counsel's use of repulsive and coarse

language in his opening statement"; "references in counsel's opening statement to recantations of

Gee and in an affidavit before the grand jury and concomitant failure to use this evidence in cross-

examination"; "omission to capitalize on Gee's identification in court of Cauthen as the person

who was with (Gee's) wife"; and "failure to ascertain the degree of sedation of Gee in the hospital

to determine its effect on his statements to police."  (*Id.* at 6–7).  He also states that the trial court

made "coercive comments to the jury" after it stated it was at an impasse.  (*Id.* at 18).

None of these arguments arise from a common core of facts with any claim asserted in the

Amended Petition.  Therefore, they are barred by the statute of limitations.

As this Court has raised the timeliness issue *sua sponte*, Petitioner will be given 30 days to

set forth any arguments as to whether he may be entitled to equitable tolling.  *See Day v.

McDonough*, 547 U.S. 198, 210 (2006).  In the event Petitioner does not submit equitable tolling

arguments in 30 days, this Court will enter a final order of dismissal.[6]

## IV.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas

proceeding where that petitioner's detention arises out of his state court conviction unless he has

"made a substantial showing of the denial of a constitutional right."  This Court reserves its

---

[6] A district court is required to hold an evidentiary hearing only when the petitioner presents a *prima facie* showing that 'a new hearing would have the potential to advance the petitioner's claim.'"  *Porter v. Adm'r of N.J. State Prison*, 2021 WL 2910944, at *4 (3d Cir. July 12, 2021) (quoting *Siehl v. Grace*, 561 F.3d 189, 197 (3d Cir. 2009)).  "In other words, th[e] Court must first determine whether … the last state court to reach the issue on its merits, issued a decision that was contrary to federal law, an unreasonable application of federal law, or ... based on an unreasonable determination of the facts."  *Murphy v. Att'y Gen. of N.J.*, 2021 WL 3144641, at *4 (D.N.J. July 26, 2021), *reconsideration denied*, 2022 WL 1213354 (D.N.J. Apr. 25, 2022).  "If no, the inquiry ends there because Petitioner has not satisfied the § 2254(d) standard."  *Id.*  Upon review of the parties' papers and other relevant materials, this Court finds that the state courts did not reach decisions that were contrary to, or an unreasonable application of, established federal law. Accordingly, this Court will deny habeas relief without an evidentiary hearing.

decision on a certificate of appealability as it is granting Petitioner a limited amount of time to submit equitable tolling arguments.

## V. CONCLUSION

For the reasons stated above, this Court denies the Amended Petition. Petitioner may submit arguments in favor of equitable tolling within 30 days. This Court reserves its decision on issuing a certificate of appealability. An appropriate order follows.


Date:_____October 8_, 2025

_____
Hon. Susan D. Wigenton
United States District Judge